**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
**YONINE LaCROIX, et al.,**

                        **Plaintiffs,**

           -against-

**CITY OF NEW YORK, et al.,**

                        **Defendants.**
-----------------------------------------------------------x

**REPORT AND**
**RECOMMENDATION**

**09-CV-3145 (RRM)**

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

On June 29, 2010, this Court conducted an infant compromise hearing to assess the reasonableness of the settlement reached by the parties in this civil rights action filed on behalf of a teenage plaintiff and his mother against the City of New York. Although the Court found the overall settlement amount (i.e., $25,000) to be fair and reasonable, the Court questioned the propriety of a $1,000 referral fee that had not previously been disclosed to the clients. The Court requested and thereafter was provided with additional submissions from plaintiffs' counsel, including reconstructions of the hours expended by counsel on the case. Having considered all of the relevant circumstances, the Court recommends that only half of the referral fee be approved and that the remaining $500 be added to the portion of the settlement funds to be deposited in a custodial account for the benefit of the infant plaintiff.

## BACKGROUND

In early May 2009, L.Y., the infant plaintiff ("L.Y."), who had just turned fifteen, was arrested for assault, allegedly thrown up against a wall and held in custody overnight. The criminal charges were later dropped.

Within days of his arrest, L.Y. and his mother, Yonine LaCroix ("Ms. LaCroix"),

visited the law office of Sheldon Ornstein ("Mr. Ornstein"), an attorney who had represented Ms. LaCroix in the past, in order to discuss L.Y.'s arrest. There they were introduced to attorney Michael P. Mangan, who was not formally associated with Mr. Ornstein, and Ms. LaCroix retained Mr. Mangan to represent her and L.Y. in connection with claims for damages arising out of L.Y.'s arrest. The written retainer agreement provides for Mr. Mangan to be paid one-third of any recovery, net of expenses. See Affirmation of Michael P. Mangan in Support of Infant Compromise Petition ("Mangan Aff.") ¶ 9 & Ex. 1, ECF Docket Entry ("DE") #18. The retainer agreement is silent as to Mr. Ornstein's involvement in the representation and as to his participation in any monetary recovery. See id. Ex. 1. Neither client was told that Mr. Ornstein would receive a share of any settlement proceeds.

Mr. Mangan filed the instant civil complaint on July 22, 2009, and he alone entered an appearance as counsel of record for the two plaintiffs.[1] Four and one-half months after this Court's initial conference, see Minute Entry (Dec. 2, 2009), DE #8, the parties notified the Court that they had agreed in principle to settle the case. See Notice of Settlement (April 16, 2010), DE #11. The Court scheduled an infant compromise hearing and directed plaintiffs to file infant compromise papers. See Scheduling Order (May 24, 2010), DE #15.

In his affirmation in support of the infant compromise petition, Mr. Mangan requested permission to pay Mr. Ornstein's firm $1,000, "as a *quantum meruit* fee," from the contingency fee payable to Mr. Mangan. Mangan Aff. ¶ 25, DE #18. At the infant

---

[1] According to Clerk's Office records, Mr. Ornstein is not admitted to practice in the Eastern District of New York.

compromise hearing held on June 29, 2010, both plaintiffs acknowledged meeting with Messrs. Ornstein and Mangan at the former's office, shortly after L.Y.'s arrest, but they stated that they were unaware that Mr. Ornstein would be receiving a share of the legal fees. Ms. LaCroix did not object to Mr. Ornstein's receiving $1,000 from Mr. Mangan's portion of the settlement proceeds, but her sixteen-year-old son felt otherwise.

Citing New York's Disciplinary Rule 2-107 and the Second Circuit's decision in <u>Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.</u>, 596 F.3d 84 (2d Cir. 2010), the Court directed plaintiffs' counsel "to submit authority in support of his request that the Court approve payment to Mr. Ornstein." Minute Entry (June 29, 2010), DE #20. In response, plaintiffs' counsel cited only the <u>Wagner & Wagner</u> case, and requested that, if the Court disallowed the Ornstein fee, the $1,000 be paid either to Mr. Mangan's firm or to the infant plaintiff, rather than being deducted from the amounts due from defendant City of New York. <u>See</u> Letter to the Court from Michael P. Mangan (July 14, 2010), DE #24.

In response to the Court's request for contemporaneous attorney time records from the Mangan and Ornstein firms, <u>see</u> Endorsed Order (July 16, 2010), DE #25, Mr. Mangan submitted a document reflecting the following: Mr. Mangan spent 33.2 hours working on the case between May 8, 2009 and July 22, 2010;[2] Mr. Ornstein spent a total of 2.4 hours on the case, all before the lawsuit was filed on July 22, 2009. <u>See</u> Exhibit 1 to Letter to the Court

---

[2] Counsel's summary contains an apparent typographical error; the last entry on the list appears as "07/22/09," rather than "07/22/10." <u>See</u> Exhibit 1 to Letter to the Court from Michael P. Mangan (July 23, 2010), DE #26-1.

from Michael P. Mangan (July 23, 2010), DE #26-1.[3]

## DISCUSSION

It is undisputed that this Court has "broad discretion to determine the value of services rendered by each attorney" on behalf of an infant plaintiff and, if a violation of DR 2-107 has occurred, to determine who should receive that portion of the fee that would otherwise be paid to the referring attorney. Wagner & Wagner, 596 F.3d at 92. Plaintiffs' counsel concedes, as he must, that he failed to comply with the mandate of DR 2-107(A), in that he did not receive in advance the requisite consent from the clients for the fee-splitting arrangement.[4] In these circumstances, the Rule disallows fee-splitting. See N.Y. Disciplinary R. 2-107(A) ("A lawyer shall not divide a fee from legal services" unless the Rule's requirements are met); accord Wagner & Wagner, 596 F.3d at 92. Nevertheless, the Court has discretion to allow attorneys "to 'cure' the violation after settlement and scheduling of an infant compromise hearing." Wagner & Wagner, 596 F.3d at 92.

In this case, the Court has considered all the surrounding circumstances, including the

---

[3] Specifically, the summary reflects that Mr. Mangan spoke with Ms. LaCroix for 0.4 hours on May 8, 2009, and set up a meeting for the following day, at which point he met with plaintiffs for 1.8 hours; and on June 11, 2009, he spoke with Mr. Mangan for 0.2 hours concerning L.Y.'s medical condition. See DE #26-1.

[4] "DR 2-107 imposes three requirements before a fee may be shared among attorneys: (1) '[t]he client consents to employment of the other lawyer after a full disclosure that a division of fees will be made'; (ii) '[t]he division is in proportion to the services performed by each lawyer, or, by a writing given the client, each lawyer assumes joint responsibility for the representation'; and (iii) '[t]he total fee of the lawyers does not exceed reasonable compensation for all legal services rendered to the client.'" Wagner & Wagner, 596 F.3d at 91 (quoting N.Y. Disciplinary R. 2-107(A)).

work performed by Mr. Ornstein, in determining whether, notwithstanding the admitted ethical violation, Mr. Ornstein should be permitted to receive any portion of the settlement proceeds as *quantum meruit*.[5] On the one hand, the Court is satisfied that Mr. Ornstein did in fact perform a limited amount of work on the matter before the lawsuit was commenced; that shortly after L.Y.'s arrest, plaintiffs met with him and Mr. Mangan and thus were aware of Mr. Ornstein's limited role in the matter; and that his $1,000 fee would be deducted from Mr. Mangan's one-third share of the settlement funds, and not from the net amount payable to the infant plaintiff. On the other hand, while the Court appreciates Mr. Mangan's candor in disclosing to the Court his fee-splitting arrangement,[6] judicial officers should take measures to ensure future compliance with DR 2-107(A), including but not limited to full and timely disclosure to clients of any fee-splitting arrangements.

Furthermore, "both the Local Civil Rules and New York State law grant broad authority to determine the reasonableness of attorney's fees" in an infant compromise setting. Wagner & Wagner, 596 F.3d at 89 (citing New York cases and Local Civ. R. 83.2(a)(2)). Indeed, the Court has an independent obligation to scrutinize a proposed infant compromise and to satisfy itself that the fees are "reasonable," Local Civ. R. 83.2(a)(2), notwithstanding

---

[5] In addition, DR 2-107(A) provides that where, as here, the attorneys have not, in a writing given the client, "assume[d] joint responsibility for the representation," the division of the fee must be "in proportion to the services performed by each lawyer . . . ." N.Y. Disciplinary R. 2-107(A)(ii).

[6] In the Wagner & Wagner infant compromise hearing, over which this Court presided, the attorney of record sought to conceal from the Court the fact that a referral fee was being paid. See 596 F.3d at 87, 88-89.

any fee-splitting agreement among counsel. See Wagner & Wagner, 596 F.3d at 90.

The amount that Mr. Mangan requests be paid to and retained by his firm (net of the proposed $1,000 referral fee) is $7,216.66 for 33.2 hours of work, or slightly less than $220.00 per hour. That amount is reasonable. In contrast, the $1,000 fee that he proposes be paid to Mr. Ornstein, as *quantum meruit*, for 2.4 hours of work stands on a different footing; that translates into an hourly rate of almost $420.00. Although Mr. Mangan asserts, without more, that Mr. Ornstein has been practicing "for more than 50 years, and has an excellent reputation," Mangan Aff. ¶ 25, this Court is not convinced that the work that he performed here -- essentially introducing the clients to Mr. Mangan -- should command that kind of hourly rate.[7] A reasonable rate is "the rate a paying client would be willing to pay," bearing in mind that "a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008). The burden is on the party seeking fees to justify the hourly rate requested. See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).

Plaintiffs' counsel has not provided sufficient justification for an hourly rate of $420.00 for Mr. Ornstein. See, e.g., Williams v. New York City Housing Auth., No. 06-CV-5473 (NGG)(LB), 2010 WL 596347, at *3 (E.D.N.Y. Feb. 18, 2010) (reducing hourly rate for

---

[7] The Court was unable to find any listing on martindale.com for Mr. Ornstein or the firm of Ornstein & Ornstein. A broader search of the Internet revealed that Mr. Ornstein and his firm are listed as personal injury lawyers. See http://www.legalpointer.com/query/S=NY-New-York/C=brooklyn. In fact, he previously represented Ms. LaCroix in a medical malpractice matter. See Petition (June 24, 2010) ¶ 9, DE #19. Thus, Mr. Ornstein brought no expertise to the prosecution of a civil rights matter, so as to warrant an hourly rate of $420.

attorney with 18 years of experience to $250, and noting that prevailing rates in the Eastern District of New York range from $200 to $350 for partners); Lynch v. Town of Southampton, 492 F.Supp.2d 197, 211-12 (E.D.N.Y. 2007) (in civil rights case, reducing to $250 the hourly rate of a seasoned and renowned attorney whose "advocacy at trial . . . was outstanding"). In this Court's view, a reasonable rate for the work performed by Mr. Ornstein would fall at the lower end of the continuum and would result in a fee that is half the amount sought, or $500. Furthermore, in order to incentivize plaintiffs' counsel to comply strictly with their ethical obligations, this Court recommends that the remaining $500 be payable to the infant plaintiff, rather than to Mr. Mangan. See Wagner v. Wagner, 596 F.3d at 92.

## CONCLUSION

For the foregoing reasons, this Court recommends that the District Court approve the proposed $25,000 infant compromise,[8] except that Mr. Ornstein's fee be reduced from $1,000 to $500, with the infant plaintiff receiving the remaining $500 in addition to his two-thirds share. Attached hereto is a modified infant compromise order that incorporates the aforesaid changes.

Any objections to the recommendations contained in this Report and Recommendation must be filed with the Honorable Roslynn R. Mauskopf on or before **August 23, 2010**.

---

[8] LY., who suffered a shoulder strain and was held overnight in custody, did not sustain any permanent injuries. See Petition (June 24, 2010) ¶¶ 7, 17, DE #19.

Failure to file objections in a timely manner may waive a right to appeal the District Court order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a)(1), 72(b)(2); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

**SO ORDERED.**

**Dated:** **Brooklyn, New York**
**August 4, 2010**

           **ROANNE L. MANN**
           **UNITED STATES MAGISTRATE JUDGE**